UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY
WELFARE FUND, TRUSTEES OF THE LOCAL
7 TILE INDUSTRY ANNUITY FUND,
TRUSTEES OF THE TILE LAYERS LOCAL
UNION 52 PENSION FUND, TRUSTEES OF
THE LOCAL 7 TILE INDUSTRY RETIREE
WELFARE FUND, TRUSTEES OF THE LOCAL
7 TILE INDUSTRY VACATION FUND,
TRUSTEES OF THE LOCAL 7 TILE INDUSTRY
SUPPLEMENTAL FUND, TRUSTEES OF THE
LOCAL 7 TILE INDUSTRY PROMOTIONAL
FUND, TRUSTEES OF THE LOCAL 7 TILE
INDUSTRY TRAINING FUND, TRUSTEES OF
THE LOCAL 7 TILE INDUSTRY BUILDING
FUND, TRUSTEES OF THE LOCAL 7 TILE
INDUSTRY DEFENSE FUND, TRUSTEES OF
THE LOCAL 7 TILE INDUSTRY LOCAL
POLITICAL ACTION COMMITTEE, TRUSTEES
OF THE BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND, THE
INTERNATIONAL MASONRY INSTITUTE,
AND THE TRUSTEES OF THE BRICKLAYERS
AND ALLIED CRAFTWORKERS POLITICAL
ACTION COMMITTEE,

                Plaintiffs,

      v.

KIMO TILE @ MARBLE, LIMITED LIABILITY
COMPANY (D/B/A KIMO TILE COMPANY,
LLC), and SASHA KISSOONDATH,

                Defendants.

**REPORT & RECOMMENDATION**

23-cv-7377 (HG) (LKE)

---

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court, on referral from the Honorable Hector Gonzalez, is the motion of the above-captioned Plaintiffs ("Plaintiffs" or the "Funds")[1] for damages against Defendant Kimo Tile & Marble Limited Liability Company ("Defendant" or "Kimo"). For the reasons set forth below, the Court respectfully recommends granting the motion and awarding damages in the amount set forth below.

## I.    BACKGROUND

The following facts are taken from the Complaint (ECF 1) and Plaintiffs' Motion for Damages (Mot. for Damages, ECFs 39-44), and they are assumed to be true for purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (holding that in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

### A.    Factual Allegations

Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c). (Compl. ¶¶ 4, 5, 7.) Some of the Funds are multiemployer employee benefit plans within the meaning of Sections 3(3) and 3(37) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3), 1002(37), and some Funds are fiduciaries within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). (*Id.* ¶¶ 4-6.)

---

[1] Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees of the Local 7 Tile Industry Retiree Welfare Fund, Trustees of the Local 7 Tile Industry Vacation Fund, Trustees of the Local 7 Tile Industry Supplemental Fund, Trustees of the Local 7 Tile Industry Promotional Fund, Trustees of the Local 7 Tile Industry Training Fund, Trustees of the Local 7 Tile Industry Building Fund, Trustees of the Local 7 Tile Industry Defense Fund, Trustees of the Local 7 Tile Industry Local Political Action Committee are collectively referred to as the "Local Funds." Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund, The International Masonry Institute, and the Trustees of the Bricklayers and Allied Craftworkers Political Action Committee are collectively referred to as the "International Funds."

Defendant Kimo is a domestic business corporation organized under the laws of the State of New Jersey and constitutes an employer pursuant to ERISA, 29 U.S.C. § 1002(5), and the LMRA, 29 U.S.C. § 185. (*Id.* ¶ 8.) Kimo entered into a collective bargaining agreement ("CBA") with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union) (*id.* ¶ 10), covering the period from June 3, 2013, through June 2, 2025. (Mot. for Default J., Decl. of William Hill ("Hill Decl.") at ¶¶ 7-8, ECF 40; Exs. A-C, ECFs 40-1, 40-2, 40-3.) The CBA designates the Funds as the entities authorized to collect benefit contributions. (Compl. ¶ 12; Hill Decl. ¶ 9; Ex. A at 41-43; Ex. B at 43-44.)

Pursuant to the CBA, Kimo was required to remit timely specified contributions to the Funds based on the number of hours worked by Union employees and performed within the trade and geographical jurisdiction of the Union ("Covered Work"). (Compl. ¶ 12; Hill Decl. ¶ 9; Ex. A at 41-43, Sch. A; Ex. B at 43-44, Sch. A.) Kimo was also subject to the Funds' Collection Policy, which establishes the Funds' right to conduct audits as necessary to determine whether the contributions have been properly made. (Compl. ¶ 13; Hill Decl. ¶ 11, Ex. D at 1, ECF 40-4.) Both the CBA and the Collection Policy provide collection policies for delinquent fringe benefit contributions, including Plaintiffs' entitlement to unpaid contributions, liquidated damages on the amount of unpaid contributions, interest, audit costs, late fees, and attorneys' fees and costs. (Compl. ¶¶ 13-14; Hill Decl. Ex. A at 42; Ex. B at 44; *see generally* Ex. D.)

When Kimo failed to report the number of hours of Covered Work to the Union in July 2023, Plaintiffs brought the instant action, alleging claims of unpaid contributions and violations of the CBA. (Compl. ¶¶ 15, 29, 35, 41.) Subsequently, Plaintiffs conducted two audits of Kimo: (1) the "Company Audit," covering October 1, 2017, through December 31, 2023, to

3

identify the unreported work and contribution deficiencies; and (2) the "Owner Audit," covering October 1, 2017, through May 25, 2024, to identify unreported payments to Union workers and contribution deficiencies. (Decl. of Terry Vouvoudakis ("Vouvoudakis Decl.") ¶¶ 7, 14, 23, ECF 41.)

The audits demonstrate that Kimo owes principal benefit contributions of $1,875,650.65, interest of $1,168,603.94 calculated through February 3, 2026, and liquidated damages of $330,848.87. (*Id.* ¶¶ 18, 23.) Plaintiffs also seek to recover interest and attorneys' fees and costs. (*Id.* ¶¶ 27-29; Mem. L. at 11, ECF 43.)

### B.    Procedural History

On October 3, 2023, Plaintiffs filed their Complaint against Defendants Kimo and Sasha Kissoondath, the "President, owner, and … controlling official" of Kimo. (*See* Compl. ¶¶ 8-9.) Defendants waived service and answered on January 12, 2024. (Waiver of Service, ECF 6; Answer, ECF 7.) After the Court held an initial conference on March 4, 2024, and adopted the parties' discovery plan, the parties proceeded to engage in discovery for several months. (Mar. 4, 2024, Min. Entry and Order; *see* ECFs 11-19.) On October 9, 2024, Kimo filed a suggestion of bankruptcy, indicating that it had filed a bankruptcy petition and Plaintiffs' claims against it were subject to an automatic stay. (Suggestion of Bankruptcy, ECF 20.) Discovery continued to proceed as to Plaintiffs' claims against Defendant Kissoondath. (Oct. 10, 2024, Order; ECFs 21-28.) On February 12, 2025, Defendant Kissoondath also filed a suggestion of bankruptcy. (Suggestion of Bankruptcy, ECF 29.) The Court administratively closed the matter while the bankruptcy stays remained in place. (Feb. 12, 2025, Order ("Because this action is stayed with respect to all Defendants, ... the Court, for administrative convenience only, administratively closes this case until one or both of the automatic stays is lifted.").)

4

Thereafter, on September 24, 2025, Plaintiffs moved to reopen the case against Kimo after its petition was dismissed by the bankruptcy court, and the Court ordered Defendants to respond. (Mot. to Reopen Case, ECF 31; Oct. 16, 2025, Order.) However, on October 23, 2025, Defendants' counsel reported that Mr. Kissoondath, his contact at Kimo, was not responding despite multiple attempts to reach him, and as a result, defense counsel was preparing to withdraw. (Status Report, ECF 33.) The Court warned Defendants that "if [Defendants] do not communicate with their counsel on or before October 30, 2025, and continue to ignore their current counsel in connection with this matter, the Court will find that they have failed to defend this action and enter default judgment against them." (Oct. 24, 2025, Order.)

On October 31, 2025, Defendants' counsel filed another status report, indicating that Defendant Kissoondath called counsel on October 29, 2025, and represented that he intended to refile a bankruptcy petition on Defendant Kimo's behalf after a state court hearing scheduled for January 9, 2026. (Status Report at 1, ECF 34.) In that status report, Defendants' counsel also represented that he and Defendants planned to discuss whether counsel would continue to represent Defendants in this action. (*Id.* at 2.) Defendants did not appear or otherwise respond to Plaintiff's motion to reopen. Thereafter, the Court granted defense counsel's motion to withdraw as attorney and held Defendants in default. (Jan. 5, 2026, Order.) The Court recognized that "Defendants communicated with counsel only one time since the Court's October 24, 2025, Order, indicated they did not have immediate plans to proceed in this case, and have ignored counsel ever since. And, to date, Defendants have not complied with the Court's unambiguous Order that directed them to indicate their position on Plaintiff's motion to reopen this case." (*Id.*) Based on Defendants' failure to defend this action, the Court found Defendants in default and struck their Answer. (*Id.*) Judge Gonzalez referred the matter to the undersigned for a report and recommendation regarding

5

the calculation of damages. (*Id.*) On February 6, 2026, Plaintiffs filed the instant motion for damages against Kimo. (ECFs 39-44.)

## II.      DISCUSSION

### A.      Jurisdiction and Venue

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiffs assert claims under ERISA, 29 U.S.C. § 1001 *et seq*, and Section 301 of the LMRA, 29 U.S.C. § 185. (Compl. ¶ 1.) Given that this action arises under the laws of the United States, the Court has subject matter jurisdiction over this action. *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-cv-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *R. & R. adopted*, 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020). "A defendant in a civil action, including a corporate defendant, has a duty to waive service of the summons, when requested." *Empire State Carpenters Welfare v. Creative Installations, Inc.*, No. 10-cv-00582 (ADS) (GRB), 2012 U.S. Dist. LEXIS 146575, at *10 (E.D.N.Y. Aug. 31, 2012) (citing Fed. R. Civ. P. 4(d)(1)), *R. & R. adopted*, 2012 U.S. Dist. LEXIS 139608 (E.D.N.Y. Sept. 27, 2012). "When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4). Here, Plaintiffs filed a waiver of service of process signed by Kissoondath, Kimo's President. (ECF 6.) Accordingly, this waiver is sufficient to satisfy service requirements. *See, e.g.*, *Empire*, 2012 U.S. Dist. LEXIS 146575, at *10. Moreover, Kimo "answered the complaint, participated in discovery . . . and never moved for

6

dismissal pursuant to [Rule] 12(b)(2), thereby waiving any argument regarding the Court's personal jurisdiction." *Ghost L.L.C. v. Ghost Fitness NYC, LLC*, No. 21-cv-3557 (NCM) (MMH), 2025 U.S. Dist. LEXIS 169281, at *9 (E.D.N.Y. Aug. 29, 2025) (internal quotations and citation omitted), *R. & R. adopted*, 2025 U.S. Dist. LEXIS 190509 (E.D.N.Y. Sept. 26, 2025); *see also* Fed. R. Civ. P. 12(h)(1) (providing that a party waives objections to personal jurisdiction if not asserted by motion). Therefore, this Court has personal jurisdiction over Kimo.

An action brought by an employee benefit plan "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Venue is also proper in any district court in which a labor organization "maintains its principal office" or "in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." *See* 28 U.S.C. § 185(a), (c). Here, the Local Funds maintain a principal place of business in Long Island City, New York. (Compl. ¶¶ 4-5.) Therefore, venue in the Eastern District of New York is proper.

### B.    Default Judgment Standard

Under Rules 16 and 37 of the Federal Rules of Civil Procedure, courts are authorized to enter default judgment against a defendant who has failed to abide by court orders. *See* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(b)(2)(A)(vi) ("[T]he court where the action is pending may issue further just orders. They may include . . . rendering a default judgment against the disobedient party."). Notably, "[t]he requirement to seek entry of a default prior to moving for a default judgment does not apply to motions under Rule 37" and "Rule 37 does not contain the same two-step process as Rule 55, presumably because parties facing . . . sanctions under Rule 37

7

have often appeared," which prevents "the Clerk of the Court from entering a default." *Lemus v. Manhattan Car Wash, Inc.*, No. 06-cv-15486, 2010 WL 4968182, at *7 n.2 (S.D.N.Y. Nov. 24, 2010); *see Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Win Const.*, 88 F. Supp. 3d 250, 262 (S.D.N.Y. 2015) (observing that "[i]mposing sanctions pursuant to Rule 37 is within the discretion of the district court" (internal quotation marks omitted) (alterations in original) (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012)); *see generally Winwear Ltd. v. N. S. U.S. Inc.*, No. 22-cv-5418 (CBA) (TAM), 2025 WL1309356, at *5 (E.D.N.Y. May 2, 2025) (discussing the factors considered in deciding whether entering a default judgment under Rule 37 is warranted), *R. & R. adopted*, 2025 WL 2085825 (E.D.N.Y. July 24, 2025).

"In particular, the failure of a corporation to appear through counsel when ordered to do so constitutes a willful default, which justifies the entry of a default judgment." *Bell v. Koss*, 2019 U.S. Dist. LEXIS 210406, at *5 (S.D.N.Y. Dec. 5, 2019); *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 116 (2d Cir. 2023) ("A corporation may not appear in federal court *pro se*, and default may enter against a corporate defendant that fails to defend itself in the action by retaining counsel."); *see, e.g.*, *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) ("Having determined that the district court properly ordered Eagle to appear through counsel, it was appropriate to enter a default judgment when Eagle willfully disregarded the district court's order.")

Here, Kimo ceased to participate in this action and failed to retain counsel, resulting in the Court's entry of default judgment. (Jan. 5, 2025, Order.) "Although the Court has determined that defendant's noncompliance warrants an entry of default judgment pursuant to Rule 37, the Court must still follow the procedure for entry of a default judgment set forth in Fed. R. Civ. P. 55." *Loc.*

8

*#46 Metallic Lathers Union v. Brookman Constr. Co.*, No. 12-cv-2180 (ARR) (LB), 2013 U.S. Dist. LEXIS 134454, at *4 (E.D.N.Y. Aug. 27, 2013), *R. & R. adopted*, 2013 U.S. Dist. LEXIS 134420 (E.D.N.Y. Sept. 18, 2013).

When evaluating liability for a default judgment, "a court is required to accept all … factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel*, 577 F.3d at 84. "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *La Barbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted). Accordingly, Kimo's failure to retain new counsel and continue to defend this action constitutes an admission of the factual allegations therein.

### C.     Liability

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Plaintiffs allege that pursuant to the CBA, Kimo was required to pay contributions to the Funds and that Kimo failed to make these required contributions. (Compl. ¶¶ 26-30; Hill Decl. ¶¶ 6-11; Mem. L. at 3.) Plaintiffs' allegations sufficiently plead breach of contract and a violation of ERISA. *See Cement Masons' Loc. 780 Trust Fund v. Integrated Structures Corp.*, No. 11-cv-4161 (SJ) (RER), 2012 U.S. Dist. LEXIS 138558, at *6 (E.D.N.Y. Aug. 24, 2012) (finding plaintiffs' allegations sufficient to plead a violation of Section 515 of ERISA); *Mason Tenders Dist. Council Welfare Fund v. Ciro Randazzo Builders, Inc.*, No. 03-cv-2677, 2004 U.S. Dist. LEXIS 9287, at *5-6 (S.D.N.Y. May 24, 2004) (finding plaintiffs' allegations that defendant

9

failed to pay fringe benefit contributions to the Funds and dues checkoffs to the Union sufficient to establish a breach of contract and to hold defendant liable under ERISA). Moreover, Plaintiffs submit audits providing evidence that Kimo failed to remit contributions to the Funds. (Vouvoudakis Decl. ¶¶ 17-18, 23.) Therefore Kimo is liable to Plaintiffs under Section 515 of ERISA.

Plaintiffs also allege that Kimo violated section 301 of LMRA. (Compl. ¶¶ 31-36; Mem. L. at 7-8.) Section 301 of LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Plaintiffs allege that the Union "is a labor organization within the meaning of section 301 of the LMRA" and "represents employees in an industry affecting commerce as defined in section 502 of the LMRA." (Compl. ¶ 32.) Plaintiffs have demonstrated that Kimo agreed to be bound by the terms and conditions of a CBA that required Kimo to "make specified hourly contributions to the Funds in connection with all Covered Work performed by its employees," and alleges that Kimo failed to do so. (*Id.* ¶¶ 33, 35.) Thus, Plaintiffs have adequately plead liability under the LMRA. *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds v. A.G. Constr. Corp.*, No. 13-cv-3590 (ENV) (SMG), 2013 U.S. Dist. LEXIS 184618, at *6 (E.D.N.Y. Dec. 5, 2013) (finding that allegations of defendant's failure to remit required contributions in breach of a CBA violates Section 301(a) of the LMRA), *R. & R. adopted*, 2014 U.S. Dist. LEXIS 12365 (E.D.N.Y. Jan. 28, 2014).

### D.   **Damages**

A default constitutes an admission of well-pleaded factual allegations except those relating to damages. *See Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations

10

in the complaint, with respect to the amount of the damages are not deemed true.") Federal Rule of Civil Procedure 55(b)(2) provides courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment." *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 113 (E.D.N.Y. 2023). The moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Here, to support their claim for damages, Plaintiffs provide affidavits from Maura Moosnick, Plaintiffs' counsel, containing contemporaneous time records and receipts, and Terry Vouvoudakis, an auditor employed by the Union, describing the procedures used to identify and calculate the amount of delinquent funds. (*See generally* Decl. of Maura Moosnick ("Moosnick Decl"), ECF 42; Vouvoudakis Decl.) An evidentiary hearing is therefore unnecessary as the Court can ensure a basis for the requested damages based on the submitted affidavits.

After establishing liability under Section 515 of ERISA, a plaintiff is entitled to an award of: "(1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505-08 (2d Cir. 1995).

11

### 1.    Unpaid Contributions

Plaintiffs seek a judgment awarding unpaid contributions in the amount of $1,875,650.65. (Proposed J., ECF 42-3.) In support, Plaintiffs provide copies of both the Company Audit and the Owner Audit, which were performed by the Union's auditor, Mr. Vouvoudakis. (Vouvoudakis Decl. Ex. E & F, ECFs 41-1, 41-2.) Mr. Vouvoudakis attests that he conducts "payroll compliance audit[s] for the purposes of assessing and reporting whether companies obligated to make benefit contributions to the Funds properly did so," and he has "20 years of experience performing such audits, including 15 years as an auditor for the Funds." (Vouvoudakis Decl. ¶ 4.) For the Company Audit, Mr. Vouvoudakis reviewed, *inter alia*, "individual earnings records (employee payroll history records)," "quarterly and annual Federal and State payroll tax returns," "Forms W-2, W-3, 1099 and 1096," "bank statements and cancel[l]ed checks," and "remittance reports submitted to the Funds." (*Id.* ¶ 11.) He identified 11,345.30 unreported hours, resulting in a total principal benefit contribution deficiency of $460,629.70. (*Id.* ¶18.)

For the Owner Audit, Mr. Vouvoudakis also reviewed Defendant Kissoondath's "personal bank statements and cancel[l]ed checks for the period covering October 1, 2017 through May 25, 2024," and "identified numerous payments" to Union workers as "unsupported cash disbursements." (*Id.* ¶¶ 19-20, 22.) He identified a total of 38,323.30 unreported hours, resulting in a total principal benefit contribution deficiency of $1,415,020.95. (*Id.* ¶ 23.)

Having reviewed Plaintiffs' supporting documentation, this Court respectfully recommends that the Funds be awarded $1,875,650.65 in unpaid employee benefit contributions from Defendant. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc.*, No. 22-cv-3559 (LDH) (LB), 2022 WL 19520880, at *4 (E.D.N.Y. Oct. 13, 2022) ("In ERISA cases

12

seeking an award of damages after a finding of liability, Courts frequently rely on the affidavits, reports, and other documentary evidence filed by plaintiffs.")

### 2.     Interest, Liquidated Damages, and Administrative Fees

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). "Under the LMRA, it is within the court's discretion to award prejudgment interest." *Finkel v. INS Elec. Servs. Inc.*, No. 06-cv-4862 (SLT) (MDG), 2008 WL 941482 at*7 (E.D.N.Y. Apr. 4, 2008). In addition, the court may award "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

Per the CBA and the Policy for Collection of Delinquent Fringe Benefit Contributions (the "Collection Policy") governing the Funds, employers whose contributions are delinquent, such as Kimo, are liable to the Funds for the amount of delinquent contributions, plus liquidated damages. (Vouvoudakis Decl. ¶ 10; Hill Decl. Ex. A at 26; Ex. B at 25; Ex. D at 4.) The Collection Policy specifies that interest is charged at the annual rate of ten percent for the Local Funds, and fifteen percent for the International Funds. (Hill Decl. Ex. D at 4) Plaintiffs' auditor performed the interest calculations for both the Company Audit and Owner Audit in accordance with the Collection Policy, through February 3, 2026, calculating a total amount of $1,168,603.94. (Vouvoudakis Decl. ¶¶ 24-25.) "The audit is entitled to a presumption of correctness, which may be overcome only if 'the employer can raise a genuine issue of material fact as to the accuracy of the calculations made by the plan.'" *Trs. of the New York City Dist. Council of Carpenters Pension Fund Welfare Fund Annuity Fund Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr. Inc.,* No. 20-cv-6894, 2021 WL 2556130, at *3-4 (S.D.N.Y. May 13, 2021) (citations omitted), *R. & R.*

13

*adopted*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021). The Court accepts the presumption of correctness for both audits, which has not been challenged by virtue of Kimo's default. As such, this Court respectfully recommends Plaintiffs be awarded $1,168,603.94 in interest.

Liquidated damages are calculated as twenty percent of the principal delinquency, totaling $303,848.87. (Vouvoudakis Decl. ¶¶ 26-27.) As discussed, the Court accepts the audits' presumption of correctness, which is unchallenged. This Court therefore respectfully recommends an award of liquidated damages in the amount of $303,848.87.

Plaintiffs also request to recover $11,520 for the cost of the audits. (Mem. L. at 2.) Both the CBA and the Collection Policy provide for recovery of the cost of reasonable audit and accounting expenses. (*Id.* at 2; Vouvoudakis Decl. ¶ 10.) "[C]ourts have routinely interpreted § 1132(g)(2)(E) of ERISA to authorize the cost of audits as part of the damages award." *Trs. of the Pavers v. Graci Paving Assocs., Inc.*, No. 25-cv-3937 (NJC) (LGD), 2026 U.S. Dist. LEXIS 12107, at *27 (E.D.N.Y. Jan. 22, 2026), *R. & R. adopted*, 2026 U.S. Dist. LEXIS 40009 (E.D.N.Y. Feb. 26, 2026). Accordingly, this Court respectfully recommends awarding $11,520 in audit costs. (Vouvoudakis Decl. ¶¶ 28-29.)

### 3.     Attorney's Fees and Costs

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D); *see also Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010) ("[u]pon a finding that defendants have been delinquent in paying contributions, liability for attorney's fees under § 1132(g)(2) is mandatory."); *Guidice v. All Reliable Servs., Inc.*, No. 23-cv-7575 (NJC) (JMW), 2025 WL 521144, at *2 (E.D.N.Y. Feb. 18, 2025) (awarding attorney's fees); *Durso v. Casa Bella Contracting, Inc.*, No. 23-cv-7107 (EK)

14

(AYS), 2025 WL 2496082, at *4 (E.D.N.Y. Aug. 12, 2025) (noting that "[p]ursuant to ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), plaintiffs are typically entitled to payment of their reasonable attorneys' fees and costs incurred in a successful action to obtain withdrawal liability"), *R. & R. adopted*, 2025 WL 2494317 (E.D.N.Y. Aug. 29, 2025); *Trs. Of Loc. 813 Pension Tr. Fund v. Rizzo Env't Servs. Corp.*, No. 19-cv-6622 (RPK) (CLP), 2020 WL 7249289, at *9 (E.D.N.Y. Oct. 31, 2020) (awarding attorney's fees in an ERISA action seeking withdrawal liability), *R. & R. adopted*, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020). Plaintiffs seek to recover $45,234 in attorney's fees and $3,901.46 in costs. (Moosnick Decl. ¶ 5.)

> a.      Hourly Rate

First, the Court must determine the reasonableness of the hourly rate charged. To determine a reasonable hourly rate, courts consider "market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Hennessy by & through Hennessy v. 194 Bedford Ave Rest Corp.*, No. 21-cv-5434 (FB) (RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (citations omitted), *R. & R. adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022). In this District, reasonable hourly rates currently range from "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) (footnote omitted); *but see Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension & Annuity Funds v. Rici Corp.*, No. 24-cv-6632 (RPK) (MMH), 2025 U.S. Dist. LEXIS 186227, at *25 (E.D.N.Y. Sep. 19, 2025) ("In ERISA cases, attorney's fees have been awarded in the Eastern District of New York at an hourly rate of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates, and up to $90.00 for non-attorney support staff."), *R. & R. adopted*, 2025 U.S. Dist. LEXIS 203723 (E.D.N.Y. Oct. 15, 2025). "The

15

fee applicant has the burden of justifying the requested rate as reasonable." *Trs. of the Metal Polishers Local 8A-28A Funds v. Legacy Restoration Metal Stone Wood, LLC*, No. 24-cv-5192 (DG) (ST), 2025 U.S. Dist. LEXIS 250317, at *25 (E.D.N.Y. Aug. 29, 2025).

Here, Attorney Maura Moosnick charged a range of hourly rates from $290 to $450 as an associate and then as a partner. (Moosnick Decl. ¶ 7.) She graduated from law school in 2021 and worked as an associate at the firm until 2024, when she became a partner. (*Id.*) Ms. Moosnick attests that the following attorneys also worked on the matter: (1) Adrianna Grancio, billing at $390 per hour, is a partner who graduated law school in 2016 and has been working at the firm since 2019; (2) Allison Herstic, billing at $340 per hour, is an associate who graduated law school in 2024; (3) Lillianna Iorfino, billing at $340 per hour, is an associate who graduated in 2021 and has been working at the firm since 2024; (4) Marlena Smith, billing at $290 per hour, graduated in 2018 and was an associate at the firm at the time; and (5) Jayden Peters, billing at $290 per hour, graduated in 2021 and was an associate at the firm at the time. (*Id.* ¶¶ 8-12.). While Attorneys Moosnick, Grancio, Iorfino, Smith, and Peters' rates are within the reasonable range awarded in this District, the Court finds that Ms. Herstic's rate is unreasonable. *See Rubin*, 763 F. Supp. 3d at 243-44. Because Ms. Herstic is a junior associate, this Court recommends reducing her hourly rate to $200. *See, e.g.*, *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Top Stone & Tile Inc.*, 2025 U.S. Dist. LEXIS 160016, at *23 (E.D.N.Y. Aug. 15, 2025) (reducing Ms. Herstic's hourly rate from $290 to $200), *R. & R. adopted*, 2026 U.S. Dist. LEXIS 44495 (E.D.N.Y. Mar. 4, 2026).

Plaintiffs' counsel also billed for the time that their paralegals spent on the matter. (Moosnick Decl. ¶¶ 13-16.) Paralegals Abigail Frankel and Eva Keating both billed at a rate of $130 per hour, and then a rate of $160 per hour after January 1, 2025. (*Id.* ¶¶ 13-14.) Paralegals Jenya Polavarapu and Alice Gaalswyk both billed at a rate of $160. (*Id.* ¶¶ 15-16.) These fees are

16

on the higher end of rates typically awarded in this District. *See Restrepo v. Dynamic Fire, Inc.*, No. 25-cv-2079 (NCM) (JAM), 2025 WL 3057385, at *14 (E.D.N.Y. Nov. 3, 2025), *R. & R. adopted*, 2026 WL 363526 (E.D.N.Y. Feb. 10, 2026). As in other recent decisions in this District, this Court finds it incongruous that Ms. Keating and Ms. Frankel would be billed at the same rate. *See id.* (discounting the rates of Ms. Keating and Ms. Frankel to $120.00 per hour where Ms. Keating graduated from college in 2014, Ms. Frankel graduated in 2021, and both were billed at $155.00 per hour). Ms. Polavarapu and Ms. Gaalswyk graduated college in 2024 and 2025, respectively, and are also billing at the same rate. (Moosnick Decl. ¶¶ 15-16.) Although Ms. Moosnick explains that the firm applies a "uniform rate" to "reflect[] the value of oversight by more experienced senior paralegals and staff along with the efficiency of work performed by junior staff," (*id.* ¶ 13 n.3), recent precedent in this District has found that, "[c]onsidering the updated hourly rates in this District . . . the Court now considers [a paralegal's] hourly rate of $125 to be reasonable." *Rubin*, 763 F. Supp. 3d at 245. As such, this Court respectfully recommends discounting the paralegals' hourly rates to $125.00.

### b. Hours Billed

Plaintiffs' attorneys billed a total of 110.6 hours, and their paralegals billed 54.1 hours, for a total of 164.7 hours worked on this matter. (Moosnick Decl. ¶ 4, Ex. H, ECF 42-2.) A party seeking to recover attorneys' fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Stratakos v. Nassau County*, 574 F. Supp. 3d 154, 160 (E.D.N.Y. 2021) (internal quotations and citation omitted). An application for attorneys' fees must be supported "by accurate, detailed, and contemporaneous time records." *Lin v. DJ's Int'l Buffet Inc.*, No. 17-cv-4994 (JS) (AYS), 2025 WL 2409784, at *4 (E.D.N.Y. May 16, 2015) (quoting *La Barbera*, 752 F. Supp. 2d at 277); *see also Gesualdi v. Gen. Concrete, Inc.*, No.

17

11-cv-1866 (CBA) (JO), 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." (citing *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010)). Contemporaneous time records submitted in support of an application need not contain great detail so long as they identify the general subject matter of time expenditures. *See Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

Here, Ms. Moosnick has submitted detailed contemporaneous time records to support Plaintiffs' request for fees. The entries are clear and substantive, and show that Plaintiffs' counsel spent a reasonable amount of time working on this matter since its inception in 2023. (*See* Moosnick Decl. Ex. G, ECF 42-1.) Plaintiffs' counsel diligently prosecuted this matter by drafting the pleadings, conducting discovery, and engaging in motion practice. (*See id.*) While these hours (164.7) are outside of the typical range of hours expended in default judgment cases involving ERISA claims, the procedural history of this case illustrates that "all parties appeared" in the action and "engaged in … a voluminous and contentious discovery process." (Mem. L. at 10 n.3; *see, e.g.*, Oct. 1, 2024, Min. Entry and Order (holding a motion hearing and granting in part Plaintiffs' motion to compel Defendants to retain a vendor to search for relevant discovery)); *Compare Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. LG Elite Plumbing, Inc.*, No. 24-cv-4273 (LDH) (LKE), 2026 U.S. Dist. LEXIS 31981, at *25 (E.D.N.Y. Feb. 17, 2026) (collecting cases where typical reasonable hours ranged from 23-35 hours), *R. & R. adopted*, 2026 U.S. Dist. LEXIS 55881 (E.D.N.Y. Mar. 17, 2026), *with Argila v. R.Z. United Constr., Inc.*, No. 23-cv-2547 (RPK) (TAM), 2026 U.S. Dist. LEXIS 12940, at *40 (E.D.N.Y. Jan. 22, 2026) (awarding higher fees where the case was "not a typical ERISA default").

18

Accordingly, this Court respectfully recommends that Plaintiffs be awarded attorneys' fees in the amount of $44,723.50.[2]

### c.    Costs

Finally, Plaintiffs request an award of $3,901.46 for litigation costs. (*See* Moosnick Decl ¶ 17.) Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Svc. Ltd.*, No. 10-cv-3027 (JFB) (AKT), 2015 WL 1529772, at *8 (E.D.N.Y. April 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). Here, Plaintiffs support their request for an award of costs with an itemized accounting of costs incurred.[3]  (*See* Moosnick Decl. Ex. G at 41-43.) The costs listed appear reasonable and customary, and include filing fees, process service costs, and online research charges. As such, this Court respectfully recommends that Plaintiffs be awarded costs in the amount of $3,901.46.

### III.    CONCLUSION

Based on the foregoing, the Court respectfully recommends that Plaintiffs' motion against Defendant Kimo be granted as to liability under ERISA and the LMRA, and award damages as follows: (1) $1,875,650.65 in delinquent benefit contributions; (2) $1,168,603.94 in interest; (3)

---

[2] Plaintiffs' attorney's fees, without Ms. Herstic and the paralegals' requested fees, are $37,841. (*See* Moosnick Decl. Ex. H.) Ms. Herstic billed 0.6 hours in this matter. (*Id.*) Applying a rate of $200 per hour, Ms. Herstic's total fee is $120. The paralegals billed 54.1 hours. (*Id.*) Applying a rate of $125 per hour, the paralegals' fee is $6,762.50. The total award of attorney's fees is adjusted to $44,723.50 ($37,841 + $120 + $6,762.50).

[3] Plaintiffs submit attorney invoices showing that the total costs incurred is $3,951.46. (Moosnick Decl. Ex. G at 43.) However, Plaintiffs only request $3,901.46. (Moosnick Decl. ¶ 17; Mem. L. at 10; Proposed Default J. at 2, ECF 42-3.)

$330,848.87 in liquidated damages; (4) $11,520 in audit costs; and (5) attorneys' fees and costs in the amount of $44,723.50.

A copy of this Report and Recommendation is being served on Plaintiffs via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant Kimo at the following address forthwith: (1) Kimo Tile @ Marble Limited Liability Company c/o Sasha Richard Kissoondath P.O. Box 707 Crowley, Texas 76036; and (2) via email at sasha@kimotile.net. Plaintiffs are also directed to mail a copy of this Report and Recommendation to Defendant and to file proof of service on the docket by July 15, 2026.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gonzalez. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
July 10, 2026

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge

20